Filed 12/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.V., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | A163272 |
| Plaintiff and Respondent, | |
| v. | (Humboldt County Super. Ct. No. JV2000161) |
| H.P., | |
| Defendant and Appellant; | |
| R.V., | |
| Defendant and Respondent. | |

Parents have a compelling interest in the companionship, care, custody, and management of their children, which is "ranked among the most basic of civil rights," and before a parent is deprived of this interest, the state must provide the parent with adequate notice and an opportunity to be heard. (*In re B.G.* (1974) 11 Cal.3d 679, 688–689.) Parents have a due process right to be informed of the nature of the proceedings and the allegations upon which the deprivation of custody is predicated so that they can make an informed decision whether to appear, prepare, and contest the allegations. (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 751.) "Notice of the specific facts upon which the petition is based is necessary to enable the parties to

1

properly meet the charges." (*In re Jeremy C.* (1980) 109 Cal.App.3d 384, 397.)

H.P. (mother) appeals from jurisdiction and disposition orders finding that S.V. (minor) came within the jurisdiction of the juvenile court on the basis that she was suffering serious emotional abuse or was at risk of suffering serious emotional abuse due to mother's unsubstantiated belief that R.V. (father) sexually abused minor. The Humboldt County Department of Health and Human Services (Department) filed a petition alleging that minor had been sexually abused by father. Mother was not named as an offending parent in the petition. The juvenile court found that the Department failed to prove the sexual abuse allegations against father. The court, however, did not dismiss the petition. Instead, the court found that the evidence supported jurisdiction based upon unpleaded allegations of emotional abuse by mother, a position urged by minor's counsel but opposed by the Department. As a result of finding jurisdiction, the court subsequently entered a disposition order.

We conclude that the juvenile court violated mother's due process rights when it established jurisdiction based on the conduct of a parent the Department never alleged was an offending parent, and on a factual and legal theory not raised in the Department's petition. We reverse the disposition order and jurisdiction finding as to mother and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. *Mendocino County Proceedings*

The dependency petition at issue in this appeal was filed by the Department in Humboldt County on November 10, 2020. However, the family was previously involved in family law proceedings in Mendocino

2

County, and Mendocino County's Department of Social Services, Family and Children's Services (FCS), previously investigated allegations that father sexually abused minor. The Humboldt County Juvenile Court in this case took judicial notice of the prior proceedings in Mendocino County and admitted into evidence the Department's reports and addendums regarding the prior Mendocino County FCS investigations, which we now summarize.

## A. Family Law Custody Proceedings

Father and mother, who met while father was vacationing in Vietnam, were married in the United States in 2014. Minor was born in May 2014 as a result of this union. In November 2018, father discovered mother kissing another man in a car with minor in the car. Father filed a petition for dissolution of marriage, and mother moved with minor from Ukiah to Redwood Valley. Mother and minor lived with mother's boyfriend, whom mother had met two weeks prior.

Father's petition sought sole legal and physical custody of minor, and on November 20, 2018, he filed a request for a temporary emergency custody order. Mother's response asserted father was a chronic alcoholic, had been abusive to her, and had physically and sexually abused minor. Over the course of the next two years, in response to mother's and father's various requests for temporary emergency custody modification orders and mother's request for a domestic violence restraining order (DVRO) alleging father physically and sexually abused minor, Mendocino County family law judges issued several temporary custody orders. The orders variously granted temporary shared physical custody; temporary sole physical custody to mother with either suspended visitation for father pending investigation of sexual abuse allegations or supervised visitation with father; or sole physical custody to father with supervised visitation with mother or with

3

unsupervised visitation with mother. Further complicating matters, in January 2019, mother moved with minor to Eureka, Humboldt County. In April 2019, the court denied mother's request for a DVRO, finding insufficient evidence to support issuing a permanent DVRO.

On November 3, 2020, the court issued a final custody and visitation order, granting mother and father joint legal custody, mother sole physical custody, and father visitation essentially every other weekend, and setting a holiday schedule. On November 6, 2020, mother filed a request for a temporary emergency custody order seeking sole physical custody and suspending all visitation with father based on allegations that minor disclosed to her therapist that father sexually abused her during a visit in mid-October. Father also filed a request to modify custody, seeking sole physical and legal custody and supervised visitation with mother. Father alleged that mother's repeated allegations of sexual abuse were false.

Mendocino County family law Judge Mayfield submitted to Mendocino County FCS an application pursuant to Welfare and Institutions Code section

4

329[1] to commence dependency proceedings, dated November 24, 2020.[2] The application stated that beginning in 2017 or 2018, mother made numerous allegations that father had inappropriate sexual contact with minor and that social workers investigated the claims and found they were inconclusive or unsubstantiated. It further summarized mother and father's custody and visitation litigation culminating in the competing requests for modification

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Section 329, subdivision (a) provides: "When a person applies to the social worker to commence proceedings in the juvenile court, the application shall be in the form of an affidavit alleging that there was or is within the county, or residing therein, a child within the provisions of Section 300, and setting forth facts in support thereof. The social worker shall immediately investigate as necessary to determine whether proceedings in the juvenile court should be commenced. If the social worker does not take action under Section 301 and does not file a petition in the juvenile court within three weeks after the application, the social worker shall endorse upon the affidavit of the application the decision not to proceed further, including any recommendation made to the applicant, if one is made, to consider commencing a probate guardianship proceeding for the child, and the reasons therefor and shall immediately notify the applicant of the action taken or the decision rendered under this section. The social worker shall retain the affidavit and the endorsement thereon for a period of 30 days after notifying the applicant."

[2] Mendocino County Judge Dolan previously submitted a section 329 application to Mendocino County FCS, dated February 19, 2019, while mother's and father's competing requests for temporary custody orders and DVRO were pending. On April 23, 2019, Mendocino County FCS filed a response summarizing a long history of prior referrals and concluding that the sexual abuse allegations were inconclusive because there was "no credible disclosure, no medical evidence, and no other evidence to support allegations of sexual abuse." Mendocino County FCS's response stated a concern about emotional abuse due to mother's conduct of making repeated allegations of sexual abuse in the presence of minor and seeking emergency room examinations. However, it did not recommend filing a section 300 petition at the time because minor was in the primary care of father.

5

orders. Judge Mayfield requested an investigation "of the past and current allegations that [minor] . . . has been sexually abused by [father]. In the event that the allegations of sexual abuse by [father] are determined to be unfounded, the Family Court respectfully requests an investigation as to whether [mother] has emotionally abused [minor] by repeatedly suggesting to [minor] that she has been the victim of sexual abuse by [father], including making one or more audio tapes in which [minor] makes statements about alleged sexual abuse while her mother speaks to her in English and in Vietnamese; subjecting [minor] to forensic interviews by Child Welfare social workers and law enforcement officers; and requesting in 2019 that a SART [suspected abuse response team] exam be performed on [minor]."

On November 30, 2020, Mendocino County FCS filed a response to Judge Mayfield's application stating that the Humboldt County Department had already filed a petition and that minor had been detained by the Humboldt County Juvenile Court. Mendocino County FCS's response enclosed a copy of the Humboldt Department's petition alleging jurisdiction under section 300, subdivision (d) based upon allegations of sexual abuse by father. The Mendocino County Family Court suspended its proceedings pending the outcome of the Humboldt County dependency case.

**B.     The Department files section 300 petition.**

In October 2020, the Department received a referral from minor's therapist stating that minor said father touched her inappropriately while she was in the bathtub and that after she fell asleep, she was awakened by father, who was lying next to her and putting his finger in her vagina. In November 2020, the Department conducted a forensic Child Abuse Services Team (CAST) interview with minor. Minor said she did not have a dad and father was not her dad. She said "[t]hree things happen[]" at father's: When she goes to sleep, he puts his fingers in her vagina; when she takes a bath, he

6

puts his fingers in her vagina; and he puts his penis in her vagina and she bleeds. "All of those [happened] five times." Minor also said father hit her "[a]lmost like everywhere" on her body, but she did not provide any further details. On November 7, 2020, minor had a SART exam. Minor was asked during the genital exam if anyone had touched her genitals, and she said, " 'My mom washes my vagina.' " The exam revealed no findings of sexual abuse.

On November 10, 2020, the Department filed a juvenile dependency petition alleging minor came within the jurisdiction of the juvenile court under section 300, subdivision (d) based upon sexual abuse by father. The petition identified father as the offending parent and alleged: "The child . . . has reported in a CAST interview on 11/06/2020, that she has been sexually abused by her father when she goes to her father's home on at least five prior occasions. [Minor] described, digital penetration by father to her vagina, and on at least one occasion her vagina bled after father put his 'peanut' in her vagina. Such ongoing sexual abuse by her father places the child at risk of harm in the father's care." (*Sic.*)

Minor was detained from father and released to mother's care. In December 2020, in advance of the contested jurisdiction hearing, father filed a section 355 objection to hearsay and motion to strike requesting that the allegations be stricken and the petition be dismissed. Alternatively, he requested that the juvenile court "conform allegations to evidence" that "Mother is mentally and emotionally abusing the child by subjecting her to years of coaching, parental alienation, and seeking frivolous medical exams that are invasive and traumatic, all for the sole purpose of substantiating false allegations against the Father." The Department did not amend the

7

petition and continued to advocate for jurisdiction under section 300, subdivision (d) based upon sexual abuse by father.

On March 11, 2021, six days before testimony began in the contested jurisdiction hearing, counsel for minor filed an at-issue statement. The statement presented two theories of the case: "1) There was some sex abuse by father, but mother has engaged in a pattern of conduct emphasizing and rewarding the child for disclosure thereof, resulting in the child identifying with said abuse in an unhealthy way; or, [¶] 2) Mother has systematically engaged in a course of parental alienation by coaching the child to report sex abuse, such that the child now identifies with being a sexual abuse victim and receives positive re-enforcement [*sic*] for disclosures." Minor's at-issue statement said that counsel for minor raised these concerns directly to the Department but that the Department declined to take action. It asked the juvenile court to amend the petition to conform to proof to add a section 300, subdivision (c) count based on mother's severe emotional abuse of minor; to sustain the petition against father under section 300, subdivision (c) in lieu of section 300, subdivision (d); and to detain minor and remove her from both mother and father pending further evaluation and assessment of the family's mental health needs. Minor's counsel suggested that the following allegations be added to the petition: "[A]llegation c-1: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof. Such emotional damage is the direct result of her continued allegations of sex abuse and identification with being a victim of sex abuse by her father. [¶] [A]llegation c-2: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof due to her mother's continued discussions of and suggestions that the minor has been sexually abused by her father."

At a pretrial conference on March 15, 2021, minor's counsel repeated her concerns regarding parental alienation and emotional abuse and stated that she did not agree with the Department's interpretation of the evidence and that she would be asking the court to conform the petition to proof to add a section 300, subdivision (c) allegation as to mother. Mother was not present at the pretrial conference,[3] but her counsel was present.

## C.    Contested Jurisdiction Hearing

Testimony began in the contested jurisdiction hearing on March 17, 2021, and continued over eight days until April 5, 2021. The juvenile court heard testimony from Ukiah Police Sergeant Rick Pintane, father's expert witness Dr. Jacqueline Singer, Mendocino County social worker Michele Steckter, Humboldt County social worker supervisor Kim Schneider, dependency investigator intern Maggie Halliday, mother, and father.

Sergeant Pintane testified that in October 2020 he investigated a sexual abuse report regarding minor. He was aware of multiple prior investigations that found no evidence to substantiate allegations of sexual abuse. He interviewed father and reviewed the November 2020 CAST interview and the results of the SART exam. He did not recommend charges against father due to a lack of physical evidence. However, he made a referral to the Department recommending that mother be investigated for possible mental and emotional abuse of minor.

Dr. Singer testified that she reviewed the Mendocino Family Court file; reviewed the jurisdiction report and addendums filed by the Department; and viewed the videos from the forensic interviews of minor on January 5, 2018,

---

[3] There is no explanation in the record for mother's absence. The court had an interpreter available for her, but the court released the interpreter when mother did not appear.

on August 27, 2019, and in November 2020. She testified that minor was interviewed at least 15 times, by police officers, social workers, an attorney, a therapist, forensic interviewers, and mother, and that repeat interviews tend to create false narratives, particularly when suggestive or leading questions are posed. Dr. Singer believed that minor's statements were tainted by suggestive interview techniques. She found it unusual that minor presented a list of abuse in the 2020 CAST interview, that she was unable to provide details when asked follow-up questions, that she did not provide a time frame for the instances of abuse, and that she said everything happened five times. Dr. Singer opined that it was likely that mother interpreted normal parenting activities as abuse and that suggestive questioning by mother and repeated investigations resulted in minor's disclosing sexual abuse. She opined that given mother's very strong belief that father sexually abused minor, it was highly unlikely minor could establish a relationship with father while she continued to be under mother's influence. She suggested placing minor in foster care to allow time for her to reestablish a relationship with father and then slowly reunifying with mother with appropriate protocols.

Mendocino County social worker Michele Steckter testified that she conducted five investigations regarding sexual abuse by father and that they were all deemed inconclusive or unsubstantiated. Steckter began an investigation into possible emotional abuse by mother, but the investigation was discontinued when the Department became involved in November 2020.

Father denied all allegations of sexual abuse and said he believed minor was lying because mother coached her to make the allegations. He testified that mother taught minor to call him " 'it' " instead of "dad" or "daddy." Mother began accusing him of inappropriately touching minor when father changed her diaper and washed her bottom when she was one and a

10

half years old. While the family lived together, he bathed minor once and mother became angry and accused him of inappropriately touching minor.

Mother testified to calling the police after an incident in November 2017, when minor told her that father hit her chest because she would not allow him to touch her private area. She also testified to other occasions when minor told her that father touched her while mother was out and that she was afraid of father. Mother denied telling minor what to say in the forensic interviews. She further denied she told minor that father was a bad person. Mother confirmed she did not allow father to bathe minor or change her diapers. Nor did she allow minor to sit on father's lap. She testified that as a toddler minor called father "ba" (Vietnamese for "daddy"), at four years old she called father "it," and now she calls him by his first name. In October 2018, mother took two photographs of minor's genitalia showing red marks. She sent them to a social worker in April 2019, after her divorce, and she showed them to a judge at a court hearing in March 2019.[4]

The Department's social worker Kim Schneider testified to her involvement in the Department's investigation and the November 2020 CAST interview. Schneider believed minor's disclosures during the CAST interview did not suggest coaching. As supervisor of the Department's investigation, Schneider learned of Mendocino County FCS's concerns about mother's coaching minor. Schneider directed assigned social workers to gather information regarding possible coaching. Schneider was not aware that Sergeant Pintane made a referral to the Department to investigate mother for mental and emotional abuse. She believed she reviewed Mendocino

---

[4] Although mother's testimony does not state the type of hearing, based on the 2019 date we assume it was a hearing during the Mendocino County family law proceedings regarding child custody.

County family law Judge Mayfield's section 329 referral asking for an investigation of mother for emotional abuse, but she understood that it was addressed to Mendocino County FCS and was based on prior allegations. Schneider confirmed that she was unaware whether the Department amended the petition to include a section 300, subdivision (c) allegation against mother for emotional abuse, nor whether the Department recommended removing minor from mother's care.

Minor's counsel called Maggie Halliday, an intern for the Humboldt County Dependency Panel, who interviewed minor remotely by videoconference in February and March 2021 to determine if minor was fearful of father. During the interview, when minor was asked if it was okay to talk about her dad, she asked to call him by his first name instead of dad, and then she said there were three things she needed to tell Halliday about father.

The juvenile court accepted into evidence the Department's jurisdiction report and six addendum reports and the videos and transcripts of the forensic interviews conducted on January 5, 2018, on August 27, 2019, and in November 2020, and took judicial notice of the Mendocino County family law and domestic violence files.

### D. Written Closing Arguments

The parties filed simultaneous written closing arguments. The Department's closing summarized the testimony and evidence presented in the jurisdiction report and addendums regarding the sexual abuse allegations. The Department urged the juvenile court to protect minor from further sexual abuse by the father. It did not support the filing of a section 300, subdivision (c) allegation against mother and argued mother is not the offending parent.

12

Minor's counsel's closing argument reiterated the request to conform the petition to proof and sustain a section 300, subdivision (c) allegation as to both parents. Minor's counsel argued the evidence supported either that (1) mother misinterpreted father's normal parenting behavior as sexual abuse and fixated on the idea that minor has been abused, causing minor emotional harm; or that (2) minor was never sexually abused and mother is engaging in a pattern of parental alienation to gain a litigation advantage. Minor's counsel requested that the juvenile court sustain the following amended allegations: "[A]llegation c-1: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof. Such emotional damage is the direct result of her continued allegations of sex abuse and identification of being a victim of sex abuse by her father. [¶] [A]llegation c-2: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof due to her mother's continued discussions of and suggestions that the minor has been sexually abused by father."

Mother's closing argument asked the juvenile court to sustain the petition as pleaded and asserted that claims by Mendocino County FCS that mother engaged in alienation or coaching were "[r]idiculous."

Father argued the original petition should be dismissed for lack of evidence. In the alternative, he joined in the request of minor's counsel to amend the petition to conform to proof and sustain a section 300, subdivision (c) allegation as to mother.

### E. Juvenile court amends petition and sustains section 300, subdivision (c) allegation.

On July 9, 2021, the juvenile court issued its written ruling, and on July 12, 2021, it issued a first amended findings and order regarding contested jurisdictional hearing. The juvenile court found the Department

13

failed to meet its burden of proof as to the section 300, subdivision (d) allegations of sexual abuse by father. The court credited the testimony of father and father's expert. It did not find mother's testimony credible, and it found the Department "did not appear to critically analyze this case, rejecting any facts that might reasonably lead to a different conclusion." (Italics omitted.) The court did not dismiss the petition, as authorized by section 356.[5] Nor did it file an application to commence dependency proceedings under section 329. Instead, the court found that minor came within the juvenile court's jurisdiction under section 300, subdivision (c) because she was suffering emotional damage or was at a substantial risk of suffering emotional damage as "the result of mother's unsubstantiated belief that father has sexually abused the child, and mother's actions causing multiple forensic evaluations of the child in mother's attempt to substantiate mother's belief that the father has sexually abused the child. The harm to the child is evidenced by the child's emotional withdrawal from the father caused by mother's actions. Even if mother and the judicial system had not negatively impacted father's relationship with the child, and father may be able to provide appropriate care for the child, he is not able to do so at this time. *Further, the parents certainly cannot successfully co-parent at this time.*" The court ordered the Department to arrange for a psychological evaluation to address the risks of leaving minor in mother's custody while working toward

---

[5] Section 356 states: "After hearing the evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly."

reunification with father and what services would be needed to accomplish the goal of coparenting. Father was granted supervised visitation. Regarding due process concerns, the court's ruling states: "The Court is aware that *the parties are* entitled to due process as it relates to any allegations made against them. The Court finds that minor's counsel has consistently and clearly made her issues in this matter clear to all parties, and the determination of the Court is consistent with minor's counsel's position, which all parties had notice of and had the right to be heard *on those issues* at the contested jurisdictional hearing."

The disposition hearing was held on July 19, 2021. The juvenile court declared minor a dependent, ordered her removed from father's custody without prejudice pending further psychological evaluations, and placed her with mother under a family maintenance plan with reunification services to father.

Mother, father, and the Department filed notices of appeal. However, only mother's appeal remains pending.[6]

## DISCUSSION

Mother argues the juvenile court abused its discretion and exceeded its authority by amending the petition to assert an unpleaded allegation against a nonoffending parent. She also argues the juvenile court's amendment of the petition violated her due process rights and resulted in prejudice. Finally, she argues that substantial evidence does not support the juvenile court's findings. Our analysis focuses on mother's argument that her due

---

[6] The Department's appeal was dismissed after the Department notified the court it was withdrawing its notice of appeal. Further, father informed the court he would not be filing an opening brief because his appeal had become moot due to developments in the underlying case. Father's request to be deemed a respondent was granted.

15

process rights were violated by the juvenile court's amendment of the petition. We agree and, therefore, reverse the jurisdiction findings and disposition order.

**I.** ***Amendment to conform to proof violated mother's due process rights because it asserted facts and theories not alleged in the original petition.***

In dependency proceedings, amendments to conform to proof are favored. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1042 (*Jessica C.*); see Welf. & Inst. Code, § 348 [Code Civ. Proc., § 469 et seq., regarding variance and amendment of pleadings in civil actions, apply to dependency petitions and proceedings].) However, "[i]f a variance between pleading and proof . . . is so wide that it would, in effect, violate due process to allow the amendment, the court should . . . refuse any such amendment." (*Jessica C.*, at p. 1042.) Or, stated otherwise, amendments according to proof should not be denied "unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*Ibid.*)

Here, mother was not named as the offending parent in the original petition, and although other agencies (the Ukiah Police Department, Mendocino County FCS, and Mendocino County family law judges) had concerns about mother's conduct, the Department did not agree that the evidence supported amending the petition to add a section 300, subdivision (c) allegation against mother. Father, who filed a respondent's brief on appeal, does not argue that mother was ever made aware that the various Mendocino County agencies believed she should be investigated for emotionally abusing minor. In any event, the Department never made any allegations against mother. Nor did the juvenile court or any party to the proceeding file an application with the Department pursuant to section 329. Although Mendocino County FCS began an investigation of mother for

16

emotional abuse, it never filed a petition alleging jurisdiction based on emotional abuse because the Department became involved.  The Department, correctly or not, disagreed with the Mendocino County agencies, and pursued a petition based on section 300, subdivision (d) only, alleging father sexually abused minor.

*Jessica C., supra*, provides an apt example of a variance between pleading and proof that is too wide to afford due process:  "For example, suppose a petition only alleges, under subdivision (d) of section 300, a variety of sexual acts perpetrated by a parent, but the trial judge does not find these are true.  The county then attempts to amend the petition to allege serious *emotional* damage under subdivision (c) of section 300, based on the idea that any child who would make such allegations, even if false, has obviously been subject to emotional abuse.  Such a tactic would be nothing more than a cheap way to establish dependency without giving the parent adequate notice of dependency jurisdiction under an emotional abuse theory."  (93 Cal.App.4th at p. 1042, fn. 14.)  That is essentially what happened in this case, except here, the Department never advocated for the amendment.  By referencing the *Jessica C.* example, we do not mean to suggest the juvenile court resorted to any type of underhanded "tactic" or "cheap shot."  Nonetheless, we find mother's due process rights were violated.

Father acknowledges in his respondent's brief that the juvenile court's amendment was "clearly a significant amendment," but he asserts it was not material because mother was not misled.  According to father, mother was made aware of "Father's theory of the case," which was that mother coached minor to falsely support sexual abuse.  Father further asserts mother had notice of his and minor's requests that the juvenile court conform the allegations to the evidence and find mother emotionally abused S.V.

17

However, as discussed *ante*, mother was never named in the petition and the Department, which is responsible for initiating dependency proceedings (§ 325; Cal. Rules of Court, rule 5.520(a)), never wavered from its position that the petition should be sustained based only upon the allegations of sexual abuse by father.

*In re G.B.* (2018) 28 Cal.App.5th 475 (*G.B.*) is factually similar to this case. The petition alleged mother's boyfriend sexually abused minor and mother failed to protect minor from the abuse. (*Id.* at p. 480.) Father was not named as an offending parent in the petition. (*Ibid.*) The juvenile court found that the department failed to meet its burden to prove the sexual abuse allegations. (*Id.* at p. 481.) However, instead of dismissing the petition, the juvenile court, on its own motion, sustained different, unpleaded allegations against father under section 300, subdivision (c), finding father had a history of coaching minor to make false accusations against mother and that father's conduct caused minor serious emotional harm. (*G.B.*, at p. 483.) The Court of Appeal found the juvenile court exceeded its authority to amend the petition to conform to proof because the amendments did not assert the same basic allegations as the original petition and instead "completely changed the grounds for establishing jurisdiction . . . ." (*Id.* at p. 486.) "Specifically, the court's allegations sought to establish jurisdiction over G.B. under a different legal theory than the original allegations (emotional abuse versus sexual abuse); they named father as an offending parent even though he was nonoffending in the original petition; and they were based on a set of facts not at issue in the original allegations (father's alleged coaching of G.B. to fabricate allegations against mother and her boyfriend versus the boyfriend's alleged sexual abuse and mother's failure to protect G.B. against that abuse)." (*Ibid.*) The Court of Appeal found the juvenile court had no

18

statutory authority to amend the petition to assert allegations against father based on a factual and legal theory not at issue in the original petition. (*Ibid.*)

Here, the juvenile court's first amended findings and order briefly discussed due process and concluded: "The Court finds that minor's counsel has consistently and clearly made her issues in this matter clear to all parties, and the determination of the Court is consistent with minor's counsel's position, which all parties had notice of and had the right to be heard *on those issues* at the contested jurisdictional hearing." Based on this record, we disagree that minor's counsel's advocacy to conform the petition to proof and assert an emotional abuse allegation against mother sufficiently apprised mother that allegations were being asserted against her, or of the specific details of the allegations ultimately sustained by the juvenile court.

First, the proposed amendments stated in minor's pretrial at-issue statement and in her closing argument differ from the juvenile court's amendment. Minor's counsel proposed the following allegations: "[A]llegation c-1: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof. Such emotional damage is the direct result of her continued allegations of sex abuse and identification of being a victim of sex abuse by father. [¶] [A]llegation c-2: The minor . . . is suffering from serious emotional damage or is in substantial danger thereof due to her mother's continued discussions of and suggestions that the minor has been sexually abused by father." Only the proposed c-2 allegation even mentions mother, and it does not specifically state that the sexual abuse by father was unsubstantiated. In contrast, the juvenile court's amendment more specifically found serious emotional damage "[as a] result of mother's unsubstantiated belief that father has sexually abused the child, and

19

mother's actions causing multiple forensic evaluations of the child in mother's attempt to substantiate mother's belief that the father has sexually abused the child. The harm to the child is evidenced by the child's emotional withdrawal from the father caused by mother's actions."

Second, the Department not only never named mother as an offending parent but also opposed the proposed amendment offered by minor's counsel. On this record, we cannot find that mother had notice that she needed to defend herself against allegations that she caused her child to suffer emotional abuse due to her own unsubstantiated belief that father was sexually abusing their child and that the emotional harm was evidenced by the child's withdrawal from father. (See *In re I.S.* (2021) 67 Cal.App.5th 918, 929 ["Although I.S.'s emotional problems were discussed throughout the proceedings, Mother had no notice evidence should be presented concerning the nature and severity of any emotional damage I.S. may have been suffering, as well as Mother's responsibility for the initial onset and continuation of I.S.'s emotional damage"].) Although mother appeared at the contested jurisdiction hearing and testified as a witness for the Department in support of the allegations against father, she was not on notice that jurisdiction could be based on her conduct because she was not named as an offending parent in the petition and the Department never advocated for jurisdiction based on her conduct. We conclude that mother was not given adequate notice of, or a fair opportunity to refute, the allegation that was sustained against her.

## II. *Juvenile court's amendment to conform to proof over the objection of the Department improperly displaced the role of the Department.*

*G.B., supra*, further found that the juvenile court improperly assumed the dual role of advocate and trier of fact, which further deprived father of his

20

due process rights to a fair trial before a disinterested neutral. (28 Cal.App.5th at p. 487.) It explained that in contested dependency proceedings, the social services agency assumes the role akin to prosecutor and generally is responsible for initiating dependency proceedings on a minor's behalf. (*Ibid.*) The juvenile court serves as an impartial trier of fact tasked with determining whether the allegations in the dependency petition are true. (*Ibid.*) A juvenile court lacks the authority to initiate, on its own motion, dependency proceedings against a parent. (*Id.* at p. 488; see Cal. Rules of Court, rule 5.520(a) ["Except as provided in sections 331, 364, 604, 653.5, 654, and 655, the social worker or probation officer has the sole discretion . . . to file a petition under section 300 and 601"].)[7] As *G.B.* further explains, when a juvenile court acts as advocate and trier of fact, the parent is deprived of his or her right to a fair and impartial arbiter, and "[t]his is especially true when the social services agency opposes the court's proposed

_____

[7] Under section 331, a juvenile court may be asked to review a social services agency's decision not to commence dependency proceedings after it has received a section 329 application from a third party requesting that the agency do so. If the juvenile court concludes the agency erred in refusing to initiate proceedings, the court has authority to order the agency to file a petition commencing dependency proceedings. Here, two Mendocino County judges filed section 329 applications requesting that Mendocino County FCS investigate whether to commence proceedings. However, nothing in the record suggests anyone sought review of Mendocino County FCS's decisions not to commence a dependency proceeding and review of those decisions was not before the Humboldt County Juvenile Court. The record includes a recommendation from Ukiah police sergeant Pintane that the Humboldt Department investigate mother for emotional abuse; however, the parties do not provide a record citation to a section 329 application made to the Department to commence proceedings against mother for emotional abuse, and from our review of the record it appears that no such application was filed. Thus, the juvenile court was never asked to review any decisions by the Department not to commence a proceeding based on emotional abuse by mother.

allegations . . . . Under those circumstances, the court has, in essence, displaced the social services agency and eliminated any distinction between the roles of advocate and impartial arbiter." (*G.B.*, at p. 488.)

Mother argues that here, as in *G.B.*, the juvenile court improperly assumed the role of advocate and trier of fact, which deprived her of a fair and impartial arbiter. We recognize that this case is distinguishable from *G.B.* in that here the juvenile court did not act entirely on its own motion. Minor and father advocated generally for an amendment of the petition to allege emotional abuse by mother. However, neither minor nor father proposed the specific and detailed amendment the juvenile court adopted. Further, the Department opposed the amendment and maintained its position that father was the offending parent. As explained in *G.B., supra*, the Department acts akin to a prosecutor in juvenile dependency proceedings and it is responsible for initiating proceedings. (28 Cal.App.5th at p. 487; Cal. Rules of Court, rule 5.520(a); § 325.) Here, the Department never initiated proceedings naming mother as the offending parent. The juvenile court's amendment of the petition to assert a new factual and legal theory of jurisdiction against a nonoffending parent, "in essence, displaced the [Department] and eliminated any distinction between the roles of advocate and impartial arbiter." (*G.B.*, at p. 488.)

In this case, minor's counsel and father and, ultimately, the juvenile court disagreed with the Department's decision not to seek jurisdiction based upon mother's conduct under section 300, subdivision (c). The statutory procedure for contesting a decision of the Department is set forth in sections 329 and 331. Either minor's counsel or father could have filed a section 329 application requesting that a petition be filed under section 300, subdivision (c) based upon mother's conduct. If the Department refused to do

so, minor or father could have requested judicial review of that decision. The juvenile court would then have been authorized either to affirm the Department's decision or to order the Department to file the petition requested. (§ 331, subd. (b).) Instead of following this statutory procedure, which preserves all parties' due process rights, the juvenile court allowed the parties to circumvent the process, and the court effectively overrode the Department's decision by amending the petition to conform to proof to assert unpleaded factual and legal theories against a nonoffending parent.

The jurisdiction and disposition order must be reversed because mother's due process rights were violated. We do not reach mother's contention that the orders were not supported by substantial evidence. However, based upon the evidence in the record, if the Department or the Mendocino County FCS[8] determines that a new petition should be filed alleging a section 300, subdivision (c) claim based upon mother's conduct, either agency may do so on remand.

## DISPOSITION

The juvenile court's jurisdiction finding as to mother and its disposition orders are reversed. Further, all orders issued as the result of this jurisdiction and after the disposition hearing are vacated. The matter is remanded for further proceedings consistent with this opinion.

---

[8] Per father's request, we take judicial notice of the juvenile court's January 10, 2022, order modifying the disposition order, removing minor from mother's custody and placing her in an approved placement, finding that her county of residence is Mendocino County, and transferring the matter to Mendocino County.

23

 

                                    _____

                                     Jackson, P. J.

WE CONCUR:

_____

Burns, J.

_____

Wiseman, J.*

*A163272/Humboldt County Department of Health and Human Services v. H.P.*

---

     * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:          Superior Court of the City and County of San Francisco

Trial Judge:         Joyce D. Hinrichs

Counsel:             Elizabeth Klippi, under appointment by the Court of Appeal, for defendant and appellant, H.P.

                      Leslie A. Barry, under appointment by the Court of Appeal, for defendant and respondent, R.V.

                      Scott A. Miles, Interim County Counsel, Anne H. Nguyen, Deputy County Counsel, for plaintiff and respondent, Humboldt County Department of Health and Human Services.

                      Suzanne Davidson, under appointment by the Court of Appeal, for minor, S.V.