Filed 12/10/24  In re N.V. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.V., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Appellant, v. L.H. et al., Defendants and Respondents. | F087568 (Super. Ct. No. JVDP-23-000045) **OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Thomas E. Boze, County Counsel, and Mark Gabriel R. Doronio, Deputy County Counsel, for Plaintiff and Respondent.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Respondent L.H.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Respondent J.V.

-ooOoo-

Appellant Stanislaus County Community Services Agency (agency) appeals from the juvenile court's order at a six-month review hearing held pursuant to Welfare and Institutions Code section 366.21, subdivision (e).[1] As recommended by the agency, the juvenile court ordered additional family reunification services for L.H. (mother), as to her child, N.V. (the child). However, the agency contends the court erred when it failed to find that the agency made reasonable efforts to return the child home for the six-month review period. Mother requests that we dismiss the appeal for lack of standing because the agency cannot show how it has been aggrieved by the court's order. We reverse the juvenile court's finding that reasonable efforts were not made by the agency and affirm the other findings.

## PROCEDURAL AND FACTUAL SUMMARY

### *Initial Removal*

On March 13, 2023, the agency received a referral alleging that the child was admitted to the hospital for bloody stool and trouble breathing. Mother failed to follow up with an appointment for the child's kidneys, and he was now experiencing a condition that could be life-threatening. The child was previously admitted to the hospital for seizures in February 2023, but mother did not fill his prescription for seizure medication.

An emergency response social worker from the agency responded to the hospital on the following day. A family maintenance social worker also responded to the hospital because mother had an open dependency case involving the child's two older siblings. The siblings were initially removed in Riverside County in March 2020 due to mother's mental health issues, past child welfare history, medical neglect, and past substance abuse. Mother was provided family reunification services until the siblings were returned to her custody in August 2021 under a plan of family maintenance. The siblings' dependency case was transferred to Stanislaus County in April 2022, and mother continued to receive family maintenance services for the siblings at the time of the child's hospitalization.

---

[1] All further statutory references are to the Welfare and Institutions Code.

Hospital staff indicated that the child had a gastrointestinal (GI) bleed, and the child's parents had a history of not following through on medical appointments and medications for the child. Mother initially told hospital staff that the pharmacist refused to provide her with the seizure medication because it was "too much medicine" for the child. Hospital staff informed mother that the pharmacist would have called the doctor directly if they refused to fill a medication. Mother then changed her story, and she insisted that the dosage was not correct. A public health nurse noted that there were chronic medical appointment cancellations for the child.

The emergency response social worker spoke to mother at the hospital. Mother lived with her best friend, the child's father, Jesus V. (father), and the child's two older siblings. Mother was also pregnant with her fifth child. She claimed that the child's urology appointment was missed because he had COVID. She indicated that she did not want to give the child his seizure medication because it was strong. The social worker reminded mother of a "family agreement," and she acknowledged that she would pick up the medication after the child's discharge.

The social worker also spoke to father over the phone. He claimed that the allegations in the referral were false, and both parents declined to take a voluntary drug and alcohol test. On March 15, 2023, the child and his siblings were taken into protective custody pursuant to a warrant due to the parents' failure to cooperate with medical professionals and provide necessary medical care.

The agency filed an original petition alleging the child was described by section 300, subdivisions (b)(1) and (j). The petition alleged the child was at substantial risk of suffering serious physical harm due to mother and father's substance abuse and failure to provide adequate medical treatment. The petition further alleged that the child was at substantial risk of neglect based upon mother and father's previous neglect of siblings that resulted in dependency proceedings in 2017 and 2020.

At a continued detention hearing held on March 22, 2023, the juvenile court ordered the child detained from mother and father's custody, and a combined jurisdiction and disposition hearing was set for April 25, 2023.

*Jurisdiction and Disposition*

The agency's jurisdiction and disposition report recommended the allegations in the original petition be found true and family reunification services be provided to mother and father. Mother's social history described her as a 26-year-old high school graduate, who was currently unemployed. She denied having any difficulties in school, and she hoped to attend college to become a therapist or ultrasound technician. Her only nondependent child was in the custody of his father, and she was expecting her fifth child in July or August 2023. Mother admitted to past marijuana use, but she denied using any other drugs.

The report documented the agency's reasonable efforts to assist mother in overcoming the problems that led to the child's removal. On March 20, 2023, mother was provided with referrals to individual counseling, couples counseling, a substance abuse assessment, random drug testing, and a clinical assessment. The social worker determined that mother was already connected to a mental health clinician. Mother refused to complete a substance abuse assessment because she completed one during her family maintenance case plan. She also declined to drug test unless it was ordered by the court.

Mother's proposed case plan included completing individual counseling, clinical assessment, substance abuse assessment, and random drug testing. In April 2023, the social worker explained to mother that a new clinical assessment was necessary due to the child's recent removal. Mother claimed that she was unable to drug test or attend appointments due to her high-risk pregnancy. However, she would not provide information from her physicians to excuse her from attending meetings or services.

Mother tested positive for methamphetamine on May 18, 2023, but she claimed that the result was due to secondhand smoke. The mental health clinician met with mother in March 2023 and April 2023, but mother did not attend an appointment on May 22, 2023.

4.

The agency was concerned about mother's inconsistent reporting of drug use and unverified excuses for missed appointments.

At the jurisdiction and disposition hearing held on June 20, 2023, mother was present and represented by counsel. The juvenile court found the allegations in the original petition true, removed the child from the parents' custody, and ordered family reunification services for mother and father. The court approved the reunification case plan, which required mother to complete individual counseling, clinical assessment, couples counseling, substance abuse assessment, and drug testing. A six-month review hearing was set for December 13, 2023.

*Six-Month Review Period*

In its report for the six-month review hearing, dated November 28, 2023, the agency recommended that family reunification services be terminated for mother and father. The child was placed in a resource family home with his newborn sibling, J.V. Mother missed several individual counseling sessions, and she was struggling to move through any topic areas.

Mother's clinical assessment was completed on August 24, 2023. The assessment noted that mother provided conflicting answers and resisted the assessment process. The evaluator determined that she had a pattern of angry outbursts when responding to questions. The assessment recommended that mother complete anger management and a psychological evaluation to determine whether she could benefit from further services.

Couples counseling did not begin because mother and father were no longer an intact couple. Mother refused substance abuse services despite a positive hair follicle test for methamphetamine in August 2023. The agency scheduled another assessment for December 4, 2023, at mother's request. She tested negative for all substances during three random drug tests from August 2023 through November 2023.

The social worker completed monthly contacts with mother, and the objectives and responsibilities of mother's case plan were discussed each time. Mother was provided with

5.

a planner and pens to help manage dates and appointments. A referral was submitted to intensive family reunification services on mother's behalf, but the referral was closed because mother was not responsive. Mother's progress was described as poor, and the agency did not know if mother could successfully address her mental health issues. Mother often reported being stressed and overwhelmed. The agency recommended termination of mother's family reunification services because she did not demonstrate that she could make changes to mitigate risks to the child.

A contested six-month review hearing was set for January 24, 2024, at mother's request. On January 3, 2024, mother's psychological evaluation was filed with the juvenile court. The report for the evaluation was completed on December 14, 2023, by Dr. Tiffany Anderson, who is a psychologist. The clinical interviews of mother were completed by Dr. Anderson on October 24, 2023, and November 22, 2023. During the evaluation, mother's thought process was often tangential and required several follow-up questions to gather sufficient information. Mother also appeared to be irritated or frustrated at times.

An intelligence assessment indicated that mother's cognitive functioning was extremely low, and her reading comprehension was comparable to a fourth grader. Mother explained that she had an individualized education plan as a child for "ADHD, anxiety, and seizures." She admitted to past marijuana use, but she claimed that she was clean for "many months." Her childhood was described as traumatic due to ongoing physical abuse and neglect by her father, but mother exhibited few posttraumatic stress symptoms. There were invalid results on the standardized measure to assess different mental health concerns, which prevented Dr. Anderson from assigning any mental health diagnoses.

Dr. Anderson provided mother a provisional diagnosis of "Intellectual Disability, Mild." The diagnosis was based upon mother's difficulty understanding questions during the evaluation, special education services as a child, and "extremely low" cognitive abilities. Additional testing and communication with close personal contacts of mother was necessary to verify the severity of her disability. A comprehensive evaluation through the local

regional center was recommended to gain additional insight into her likely intellectual disability and determine her eligibility for services. Such services had the potential to give mother the additional support needed to parent successfully.

The evaluation recommended that mother's service providers consider adjusting their communication styles to meet mother's needs. This adjustment would increase the likelihood that mother could learn and retain important information. It was also recommended that mother be given a substantial amount of time to learn and demonstrate her skills. Dr. Anderson indicated that mother's case plan had not been tailored to her specific needs as a parent with an intellectual disability. The case plan needed to be modified with the understanding that services may need to be in place for longer than typically expected. Infant mental health services were also recommended to help prepare mother for parenting a young child.

The agency submitted an addendum on January 23, 2024, which recommended that mother's family reunification services be continued. The change in recommendation was made to provide mother an opportunity to participate in services that were tailored to her intellectual disability. A new referral was sent for intensive family reunification services, and a parent partner was assigned to mother. The social worker was working to complete the regional center application to connect mother with the services identified in the psychological evaluation. The recommendation to terminate father's family reunification services remained the same.

At the six-month review hearing held on January 24, 2024, mother and father were both present and represented by counsel. The agency's counsel submitted on the six-month review hearing report, psychological evaluation, and subsequent addendum report. He also requested that the juvenile court adopt the updated case plan based upon the services recommended in the psychological evaluation. Mother's counsel submitted on the agency's updated report, and she acknowledged that mother needed additional services for her specific needs.

After hearing comments from counsel, the juvenile court found that return of the child to either parent would be detrimental.  It went on to state as follows:

> "I do not find that there is clear and convincing evidence that reasonable services were offered or provided to the mother. I take that primarily from the evaluations filed on the 3rd of January. And I am glad to see the agency change its recommendation and address these issues in terms of a parent partner working with mom, [regional center] evaluation, and [intensive family reunification], and focus topics for the clinician that are addressed in the updated case plan.

> "Other than that, I will adopt the findings and recommendations contained in the addendum report …."

At the conclusion of the juvenile court's ruling, the agency's counsel requested that the court find that reasonable services were provided.  The agency's counsel insisted that the social worker was "doing everything she can do," and he asserted that the agency promptly implemented the recommended changes from the psychological evaluation.  It was requested that the court limit its reasonable services finding to a specific time period.

The court responded by stating:

> "Well, as far as the Agency following the case plan, they are not restricted to only follow the case plan in — in place and approved, but also to constantly evaluate the parent's conduct, compliance, abilities, and evaluate that in terms of modifying or changing services to fit the individual parent.

> "The case plan certainly doesn't have to be perfect.  Reasonable services do not have to be perfect, but they do need to be reasonably tailored to the parent and the case.  And it became somewhat obvious as far as June of 2023 in terms of the addendum report that was filed that there were issues in regard to this mother, her abilities to comply with the services being offered to her, her cooperation that might have caused someone to look at the situation.  At some point, obviously the Agency realized, without prompting from the Court, that a psychological evaluation was necessary.  There is no question that once that came in, you were willing to follow that plan; however, prior to that there were concerns about [mother] that might have raised those questions.  So certainly, there was no bad faith in not following the case plan, but I do think there is not clear and convincing evidence today, that from June

forward, specifically tailored reasonable services were offered or provided to this mother."

The juvenile court adopted the agency's recommendation to continue family reunification services for mother, and it modified the recommended findings to state that the agency has not complied with the case plan by making reasonable efforts to make it possible for the child to safely return home. A 12-month review hearing was set for May 7, 2024. Father's family reunification services were terminated.

## DISCUSSION

### A. Standing

The agency contends that the juvenile court erred when it refused to find that reasonable services were provided for the six-month review period. Mother argues the agency was not aggrieved by the juvenile court's order. Thus, she claims the agency lacks standing to appeal the orders from the six-month review hearing. In support of her contention, she requests that we take judicial notice of a May 7, 2024 minute order where the juvenile court made "interim IV-E findings" pending the next hearing. We grant mother's request for judicial notice filed on May 31, 2024, but we disagree that the finding impacts the agency's standing to appeal the reasonable services finding.[2]

" ' "In juvenile dependency proceedings, as in civil actions generally [citation], only a party aggrieved by the [order or] judgment has standing to appeal. [Citations.]" ' [Citations.] 'To be aggrieved, a party must have a *legally cognizable interest* that is injuriously affected by the court's decision.' " (*In re D.M.* (2012) 205 Cal.App.4th 283, 293, 294.) Standing to appeal is construed liberally, and doubts are resolved in its favor. (*In re K.C.* (2011) 52 Cal. 4th 231, 236, 255.) For purposes of standing, an aggrieved person "is

---

[2]     The appellate court moreover may take judicial notice of the records of any court of this state, provided that each party has a reasonable opportunity to address the propriety of taking judicial notice and the tenor of notice to be taken. (Evid. Code, §§ 459, subd. (a)–(c), 452, subd. (d))

one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*Ibid.*)

To determine whether the agency was aggrieved by the juvenile court's order, we must first examine the role of the agency in the instant proceedings. " 'The county's social services agency plays a "hybrid" role in dependency proceedings, exercising both executive and judicial functions.' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 809.) In its role as an arm of the court, the county social services agency "provides essential information to the court." (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7.) In particular, it "prepare[s] social study reports and make[s] recommendations to assist the court," (*M.C.*, *supra*, at p. 810), including recommendations regarding the plan for return of the child to their parents and for achieving legal permanence if efforts to reunify fail. (§ 358.1, subd. (b).) In exercising its duties, the county social services agency " ' "stands in *loco parentis* to the minor in a proceeding whose primary consideration is the minor's welfare." ' " (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 759.)

In addition, a social services agency "assumes a role akin to the prosecutor in ... a juvenile delinquency proceeding. [Citations.] In that role, the social services agency generally is responsible for initiating dependency proceedings on a minor's behalf." (*In re G.B.* (2018) 28 Cal.App.5th 475, 487.) When a child is removed from their parent during a dependency proceeding, the juvenile court is generally required to order the agency to provide reunification services to the child and parent. (§ 361.5, subd. (a); see also § 362, subd. (d).) At each review hearing, the juvenile court must determine the extent of the agency's compliance with the case plan in making reasonable efforts. (§ 366, subd. (a)(1)(B).)

A court has discretionary authority under section 352 to extend reunification services beyond the 18-month review period where "deprivation of reasonable services" impedes the court's ability to properly evaluate the prospects for family reunification. (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 636.) Furthermore, to be eligible to receive federal

foster care maintenance payments (42 U.S.C. §§ 671(a)(15), 672, 674), agencies must make reasonable efforts "to effect the safe reunification" of families.  (45 C.F.R. 1356.21(b).)[3]

Given the agency's statutory duty to make recommendations to the juvenile court regarding reunification, its financial obligation to make reasonable efforts to reunify the child and mother during the reunification period, and its duty to consider the child's need for prompt resolution, we conclude the agency had a cognizable interest that was injuriously affected by the orders in this case.  An erroneous finding that reasonable services were not provided would have an adverse impact on the agency's ability to request termination of reunification services at a subsequent review hearing while standing in loco parentis to the child.  (See *In re D.R.* (2010) 185 Cal.App.4th 852, 859 [the agency had a cognizable legal interest that was injuriously affected when the juvenile court denied the agency's motion to terminate de facto parent status].)

The result requested by mother would prevent the agency from correcting an improper finding that reasonable services were not provided despite that finding's ability to support an extension of services at a future review hearing.  (See *In re T.G.* (2010) 188 Cal.App.4th 687, 696 [Father permitted to challenge reasonable services finding based upon the adverse consequences that finding would pose at future review hearings.].)  The fact that the juvenile court made interim findings related to the agency's federal funding under Title IV-E Social Security Act, title 42 United States Code sections 670-679c does not eliminate any negative impacts from the previous finding.

In sum, the agency was aggrieved when the juvenile court declined to accept the agency's recommended finding that reasonable efforts were made.  Based on the foregoing, we conclude the agency has standing to challenge the juvenile court's orders.

---

**3**    Absent a statutory exception, federal law requires state plans for their foster care system to provide that "reasonable efforts shall be made to preserve and reunify families." (42 U.S.C. § 671(a)(15)(B).)  These efforts include the provision of reunification services. (42 U.S.C. §§ 629, 629a(a)(7).)

### B. Reasonable Services

"Family reunification services play a critical role in dependency proceedings. [Citations.] At the dispositional hearing, the court is required to order the agency to provide child welfare services to the child and his or her parents. (§ 361.5, subd. (a).) Services 'may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children.' (§ 300.2.) Reunification services should be tailored to the particular needs of the family." (*In re M.F.* (2019) 32 Cal.App.5th 1, 13 (*M.F.*).)

At each review hearing, "if the child is not returned to his or her parent, the juvenile court is required to determine whether 'reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent ….' (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a).) The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult ….' " (*M.F.*, *supra*, 32 Cal.App.5th at p. 14.)

In making this determination, we bear in mind that "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) We review the juvenile court's findings for sufficiency of the evidence. (*Amanda H. v. Superior Court* (2008) 166

Cal.App.4th 1340, 1345.) " ' "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." ' [Citation.]" (*Ibid*.)

Where, as here, the trial court concluded that the party with the burden of proof did not carry the burden, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

The agency contends that the court based its decision on the misguided assumption that the social worker was required to have known of mother's intellectual disability at the outset of the proceedings. It argues that the court's ruling that the initial case plan was inadequate is inconsistent with the court's previous approval of that plan. Mother does not respond to the agency's reasonable services argument on the merits. We recognize that this decision was an implied concession of the ultimate issue, but we will still address the juvenile court's finding that reasonable efforts were not made. (See *In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1351 [a failure to respond to an argument is an implicit concession].)

In the present case, the child was removed from mother's care due to both parents' substance abuse and failure to provide the child with adequate medical treatment. The objectives and responsibilities of mother's case plan included individual counseling, couples counseling, substance abuse assessment, random drug testing, and a clinical assessment. Mother was already connected to a mental health clinician at the outset of the proceedings, and the juvenile court approved mother's case plan at the disposition hearing held on June 20, 2023.

During the six-month reunification period, mother missed several individual counseling sessions, and she refused substance abuse services. The social worker completed monthly contacts with mother, and she discussed the objectives and responsibilities of

mother's case plan during each contact. Mother was provided a planner to assist her in managing appointments, and a referral was submitted to intensive family reunification services. However, the referral to intensive services was closed due to mother's failure to respond. On August 24, 2023, the clinical assessment recommended that mother be provided with a psychological evaluation to determine if she could benefit from further services.

On October 24, 2024, mother started to participate in her clinical interview for the psychological evaluation, and Dr. Anderson completed the report on December 14, 2023. The report concluded that mother suffered from a mild intellectual disability based upon the various assessments completed by Dr. Anderson. The evaluation recommended that mother be given a substantial amount of time to learn and demonstrate her skills. Dr. Anderson indicated that mother's case plan was not previously tailored to her specific needs as a parent with an intellectual disability, and the case plan needed to be modified because mother's services may require an extended period of time.

In response to the psychological evaluation, the agency submitted an updated report on January 23, 2024, which detailed modifications to the case plan as recommended by the evaluation. At the six-month review hearing, the juvenile court refused to find that reasonable services were provided because it believed that the agency was aware that mother was having difficulty complying with services in June 2023. The court acknowledged that the agency was willing to follow the modified case plan suggested by the psychological evaluation. However, it concluded that "prior to [the evaluation] there were concerns about [mother] that might have raised those questions."

As discussed previously, the record must demonstrate that the agency, "identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult...." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) Here, the agency identified neglect and

substance abuse as the problems leading to the loss of custody, and it offered services to fix those problems. The social worker took numerous steps to help assist mother when compliance proved difficult throughout the reunification period.

The juvenile court's comments suggest that the agency should have been aware of mother's cognitive deficits in June 2023, however, it approved the case plan and ordered that the recommended services be provided to mother on June 20, 2023. During the social worker's interview for the social study, mother identified herself as a high school graduate with no difficulties in school, and she claimed that she would be attending college. The agency's identified concerns in June 2023 involved mother's inconsistent reporting of drug use and failure to attend appointments. The social worker did not report that mother was having difficulty with comprehension or communication.

In sum, there were simply no facts present for the court to infer that mother's intellectual disability was apparent prior to the completion of the psychological evaluation. A social worker does not have the expert qualifications of a mental health professional such as a psychologist or therapist to make such a diagnosis in the first instance. Accordingly, a case plan tailored to mother's cognitive difficulties was not necessary until such a diagnosis was rendered by Dr. Anderson.

Therefore, we conclude the evidence compelled the court to find that the agency made reasonable efforts to return the child to his home. The agency made continued efforts to connect mother to services despite her lack of cooperation and compliance during the review period. In making its finding, the juvenile court improperly focused on the ineffectiveness of the services that were provided to mother due to her undiagnosed cognitive disability. The court should have considered the agency's extensive efforts in light of the limited information available to it regarding mother's intellectual capacity. Under the circumstances there was no room for a determination that reasonable services were not provided.

**DISPOSITION**

The juvenile court's order of January 24, 2024, is reversed only with regard to its finding that the agency had not complied with the case plan by making reasonable efforts to make it possible for the child to safely return home, and that finding is vacated.  The matter is remanded to the juvenile court to enter a new finding that the agency had complied with the case plan by making reasonable efforts to make it possible for the child to safely return home.  In all other respects, the order is affirmed.

FRANSON, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

16.