Filed 12/10/24  In re J.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.V., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>L.H. et al.,<br><br>Defendants and Respondents. | F087670<br><br>(Super. Ct. No. JVDP-23-000129)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Thomas E. Boze, County Counsel, and Mark Gabriel R. Doronio, Deputy County Counsel, for Plaintiff and Respondent.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Respondent L.H.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Respondent J.V.

-ooOoo-

Appellant Stanislaus County Community Services Agency (agency) appeals from the juvenile court's order at a six-month review hearing held pursuant to Welfare and Institutions Code section 366.21, subdivision (e).[1]  As recommended by the agency, the juvenile court ordered additional family reunification services for L.H., (mother) as to her child, J.V. (the child).  However, the agency contends the court erred when it failed to find that the agency made reasonable efforts to return the child home for part of the six-month review period.  Mother requests that we dismiss the appeal for lack of standing because the agency cannot show how it has been aggrieved by the court's order.  We reverse the juvenile court's finding that reasonable efforts were not made by the agency and affirm the other findings.

**PROCEDURAL AND FACTUAL SUMMARY**

*Initial Removal*

In July 2023, the agency received a referral shortly after the child's birth alleging that mother tested positive for illegal substances throughout her pregnancy.  At the time of the referral, mother had an open family reunification case for his sibling, N.V.[2]  Mother and the child tested negative for substances at the time of the delivery.

The social worker assigned to N.V.'s reunification case reported that mother tested positive for methamphetamine in November 2022, December 2022, May 2023, and June 2023.  N.V. was removed in March 2023 due to concerns for medical neglect and substance abuse by mother and the child's father, Jesus V. (father).  The child's two older siblings were also removed in March 2023 while they were living with mother under a family maintenance plan.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     We grant the agency's April 16, 2024 request for judicial notice of the records from N.V.'s companion case No. F087568.  (Evid. Code, §§ 451, subd. (a), 459.)  Both appeals involve the same factual background and legal argument.

Emergency response social workers from the agency responded to the hospital to make contact with mother and the child. Mother did not appear to know how to care for the child, and she was not quick to react when the child starts choking. Hospital staff indicated that father appeared to be on drugs because he was yelling and being aggressive. Mother was confrontational throughout the interview, and she denied that she used any drugs during her pregnancy. Mother was living in emergency shelters, and she was unable to provide a safe alternative plan for the child. The child was taken into protective custody pursuant to a warrant, and he was placed in a resource family home with N.V.

The agency filed an original petition alleging the child was described by section 300, subdivisions (b)(1) and (j). The petition alleged the child was at substantial risk of suffering serious physical harm due to mother and father's substance abuse. The petition further alleged that the child was at substantial risk of neglect based upon mother and father's previous neglect of siblings that resulted in dependency proceedings in 2017, 2020, and 2023.

At a continued detention hearing held on July 31, 2023, the juvenile court ordered the child detained from mother and father's custody, and a combined jurisdiction and disposition hearing was set for August 31, 2023.

*Jurisdiction and Disposition*

The agency's jurisdiction and disposition report recommended the allegations in the original petition be found true and family reunification services be provided to mother and father. Mother's social history described her as a 26-year-old high school graduate, who was currently unemployed. She denied having any difficulties in school, and she hoped to attend college to become a therapist or ultrasound technician. Mother admitted to past marijuana use, but she denied using any other drugs.

The report documented the agency's reasonable efforts to assist mother in overcoming the problems that led to the child's removal. On July 28, 2023, mother was

provided with referrals for a domestic violence assessment, individual counseling, parenting education, parent child labs, and an anger management assessment. Mother was already connected to a mental health clinician for N.V.'s case. On August 9, 2023, mother's clinician explained that she was consulting with her supervisor about recommending a psychological evaluation. Hair follicle tests from August 15, 2023, revealed a positive result for methamphetamine, and mother missed multiple substance abuse assessments.

Mother's proposed case plan included completing individual counseling, a clinical assessment, couples counseling, a substance abuse assessment, and drug testing. The agency was concerned that mother did not understand the agency's concerns and her children's needs, and it was anticipating a recommendation for a psychological evaluation from mother's clinical assessment.

On August 25, 2023, the agency submitted additional information, which included the clinical assessment recommending a psychological evaluation. The assessment noted that mother provided conflicting answers and resisted the assessment process. The evaluator determined that she had a pattern of angry outbursts when responding to questions. The assessment recommended that mother complete anger management and a psychological evaluation to determine whether she could benefit from further services.

At the jurisdiction and disposition hearing held on August 31, 2023, mother was present and represented by counsel. The juvenile court found the allegations in the original petition true, removed the child from the parents' custody, and ordered family reunification services for mother and father. The court approved the reunification case plan, which required mother to complete individual counseling, a psychological evaluation, couples counseling, substance abuse assessment, and drug testing. A six-month review hearing was set for February 13, 2024.

4.

*Six-Month Review Period*

In its report for the six-month review hearing, filed January 31, 2024, the agency recommended that family reunification services be continued for mother and terminated for father. The child remained placed in a resource family home with his older sibling, N.V. Mother missed several individual counseling sessions, and she was refusing to do in-person sessions with her clinician. Her clinician noted that mother became verbally aggressive when the clinician advised her to be in a confidential session for her phone sessions. Couples counseling did not begin because mother and father were no longer an intact couple. Mother refused substance abuse services despite a positive hair follicle test for methamphetamine in August 2023. She tested negative for all substances during four random drug tests from August 2023 through January 2024.

The social worker completed monthly contacts with mother, and the objectives and responsibilities of mother's case plan were discussed each time. Mother was provided with a planner and pens to help manage dates and appointments. A referral was submitted to intensive family reunification services on mother's behalf, but the referral was closed because mother was not responsive. Mother's progress was described as poor, and the agency did not know if mother could successfully address her mental health issues. Mother often reported being stressed and overwhelmed. The agency recommended termination of mother's family reunification services because she did not demonstrate that she could make changes to mitigate risks to the child.

The report for the psychological evaluation was completed on December 14, 2023, by Dr. Tiffany Anderson, who is a psychologist. The clinical interviews of mother were completed by Dr. Anderson on October 24, 2023, and November 22, 2023. During the evaluation, mother's thought process was often tangential and required several follow-up questions to gather sufficient information. Mother also appeared to be irritated or frustrated at times.

An intelligence assessment indicated that mother's cognitive functioning was extremely low, and her reading comprehension was comparable to a fourth grader. Mother explained that she had an individualized education plan as a child for "ADHD, anxiety, and seizures." She admitted to past marijuana use, but she claimed that she was clean for "many months." Her childhood was described as traumatic due to ongoing physical abuse and neglect by her father, but mother exhibited few posttraumatic stress symptoms. There were invalid results on the standardized measure to assess different mental health concerns, which prevented Dr. Anderson from assigning any mental health diagnoses.

Dr. Anderson provided mother a provisional diagnosis of "Intellectual Disability, Mild." The diagnosis was based upon mother's difficulty understanding questions during the evaluation, special education services as a child, and "extremely low" cognitive abilities. Additional testing and communication with close personal contacts of mother was necessary to verify the severity of her disability. A comprehensive evaluation through the local regional center was recommended to gain additional insight into her likely intellectual disability and determine her eligibility for services. Such services had the potential to give mother the additional support needed to parent successfully.

The evaluation recommended that mother's service providers consider adjusting their communication styles to meet mother's needs. This adjustment would increase the likelihood that mother could learn and retain important information. It was also recommended that mother be given a substantial amount of time to learn and demonstrate her skills. Dr. Anderson indicated that mother's case plan had not been tailored to her specific needs as a parent with an intellectual disability. The case plan needed to be modified with the understanding that services may need to be in place for longer than typically expected. Infant mental health services were also recommended to help prepare mother for parenting a young child.

In December 2023, a new referral was sent for intensive family reunification services, and a parent partner was assigned to mother. The report noted that the agency proactively engaged with mother's service providers once it learned of mother's need for more tailored services. In January 2024, mother's clinician reported that mother became frustrated multiple times when she tried to explain and correct any misconceptions or miscommunications. After further prompts, mother responded, "I know how to take my children for their [appointments], don't talk to me like I'm a retard."

At the six-month review hearing held on February 13, 2024, mother was present and represented by counsel. The agency's counsel submitted on the six-month review hearing report and requested that the court find that reasonable services were provided. The child's counsel submitted on the recommendation, but she indicated that she would be opposed to additional services if mother still struggled to make progress by the next review hearing. Mother's counsel requested that the court make a finding that reasonable services were not provided to be consistent with N.V.'s case. She acknowledged that mother was connected with an intensive family reunification worker and was working hard to address her issues.

The court allowed the agency's counsel to provide an update on the changes to mother's case plan in relation to mother's "cognitive difficulties." Counsel for the agency represented that everything recommended in the psychological evaluation was implemented in both the child's case and N.V.'s case. The cases involved the same social worker, and the agency wanted both case plans to look similar because the children were similar ages and on a similar timeline for reunification. The agency implemented following services once the psychological evaluation came out: regional center application assistance, parent partner to help with medical appointments, and communication with mother's mental health clinician about the evaluation results.

The juvenile court allowed mother's counsel to respond to the agency, and her counsel requested that the court find reasonable services were not provided until the case

plan was modified for the psychological evaluation recommendations. The juvenile court agreed, and it ruled as follows, "It does appear that although for the bulk of this reporting period I would not find reasonable services given the results of the psych eval on mom, however, beginning December 14, 2023, the Agency immediately embarked on shoring up those referrals and encumbrances, and I would find from that date forward there is evidence of reasonable services."

After its ruling, the juvenile court adopted the agency's recommendation to continue family reunification services for mother, and it modified the recommended findings to state that the agency complied with the case plan by making reasonable efforts to make it possible for the child to safely return home beginning December 14, 2023. A 12-month review hearing was set for August 6, 2024, and father's family reunification services were terminated.

The agency's counsel entered an objection to the finding, and he requested that the finding for reasonable services apply to the entire period. The juvenile court noted the agency's objection, and it concluded by stating, "I certainly don't find any bad faith action on the part of the Agency, but once those results of the psych eval were reviewed, that the services -- immediately services needed to be reasonably tailored given [mother]'s situation. But certainly from December 14th forward."

## DISCUSSION

*A. Standing*

The agency contends that the juvenile court erred when it refused to find that reasonable services were provided for the entire six-month review period. Mother argues the agency was not aggrieved by the juvenile court's order.[3] Thus, she claims the agency lacks standing to appeal the orders from the six-month review hearing. In support of her

---

**3** Father joined the argument made in mother's respondent's brief in lieu of filing a separate brief.

contention, she requests that we take judicial notice of a May 7, 2024 minute order from N.V.'s case where the juvenile court made "interim IV-E findings" pending the next hearing. We grant mother's request for judicial notice filed on May 31, 2024, but we disagree that the finding impacts the agency's standing to appeal the reasonable services finding.[4]

" ' "In juvenile dependency proceedings, as in civil actions generally [citation], only a party aggrieved by the [order or] judgment has standing to appeal. [Citations.]" ' [Citations.] 'To be aggrieved, a party must have *a legally cognizable interest* that is injuriously affected by the court's decision.' " (*In re D.M.* (2012) 205 Cal.App.4th 283, 293, 294.) Standing to appeal is construed liberally, and doubts are resolved in its favor. (*In re K.C.* (2011) 52 Cal. 4th 231, 236, 255.) For purposes of standing, an aggrieved person "is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*Ibid.*)

To determine whether the agency was aggrieved by the juvenile court's order, we must first examine the role of the agency in the instant proceedings. " 'The county's social services agency plays a "hybrid" role in dependency proceedings, exercising both executive and judicial functions.' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 809.) In its role as an arm of the court, the county social services agency "provides essential information to the court." (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7.) In particular, it "prepare[s] social study reports and make[s] recommendations to assist the court," (*M.C.*, *supra*, 199 Cal.App.4th at p. 810), including recommendations regarding the plan for return of the child to their parents and for achieving legal permanence if efforts to reunify

---

[4] The appellate court moreover may take judicial notice of the records of any court of this state, provided that each party has a reasonable opportunity to address the propriety of taking judicial notice and the tenor of notice to be taken. (Evid. Code, §§ 459, subd. (a)–(c), 452, subd. (d))

fail.  (§ 358.1, subd. (b).)  In exercising its duties, the county social services agency " ' "stands *in loco parentis* to the minor in a proceeding whose primary consideration is the minor's welfare." ' "  (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 759.)

In addition, a social services agency "assumes a role akin to the prosecutor in ... a juvenile delinquency proceeding.  [Citations.]  In that role, the social services agency generally is responsible for initiating dependency proceedings on a minor's behalf."  (*In re G.B.* (2018) 28 Cal.App.5th 475, 487.)  When a child is removed from their parent during a dependency proceeding, the juvenile court is generally required to order the agency to provide reunification services to the child and parent.  (§ 361.5, subd. (a); see also § 362, subd. (d).)  At each review hearing, the juvenile court must determine the extent of the agency's compliance with the case plan in making reasonable efforts. (§ 366, subd. (a)(1)(B).)

A court has discretionary authority under section 352 to extend reunification services beyond the 18-month review period where "deprivation of reasonable services" impedes the court's ability to properly evaluate the prospects for family reunification. (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 636.)  Furthermore, to be eligible to receive federal foster care maintenance payments (42 U.S.C. §§ 671(a)(15), 672, 674), agencies must make reasonable efforts "to effect the safe reunification" of families.  (45 C.F.R. 1356.21(b).)[5]

Given the agency's statutory duty to make recommendations to the juvenile court regarding reunification, its financial obligation to make reasonable efforts to reunify the child and mother during the reunification period, and its duty to consider the child's need for prompt resolution, we conclude the agency had a cognizable interest that was

---

[5]     Absent a statutory exception, federal law requires state plans for their foster care system to provide that "reasonable efforts shall be made to preserve and reunify families."  (42 U.S.C. § 671(a)(15)(B).)  These efforts include the provision of reunification services. (42 U.S.C. §§ 629, 629a(a)(7).)

injuriously affected by the orders in this case. An erroneous finding that reasonable services were not provided would have an adverse impact on the agency's ability to request termination of reunification services at a subsequent review hearing while standing in loco parentis to the child. (See *In re D.R.* (2010) 185 Cal.App.4th 852, 859 [the agency had a cognizable legal interest that was injuriously affected when the juvenile court denied the agency's motion to terminate de facto parent status].)

The result requested by mother would prevent the agency from correcting an improper finding that reasonable services were not provided despite that finding's ability to support an extension of services at a future review hearing. (See *In re T.G.* (2010) 188 Cal.App.4th 687, 696 [Father permitted to challenge reasonable services finding based upon the adverse consequences that finding would pose at future review hearings.].) The fact that the juvenile court made interim findings related to the agency's federal funding under Title IV-E Social Security Act, title 42 United States Code sections 670-679c in N.V.'s case does not eliminate any negative impacts from the previous finding.

In sum, the agency was aggrieved when the juvenile court declined to accept the agency's recommended finding that reasonable efforts were made for the entire period. Based on the foregoing, we conclude the agency has standing to challenge the juvenile court's orders.

### B. Reasonable Services

"Family reunification services play a critical role in dependency proceedings. [Citations.] At the dispositional hearing, the court is required to order the agency to provide child welfare services to the child and his or her parents. (§ 361.5, subd. (a).) Services 'may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children.' (§ 300.2.) Reunification services should be tailored to the particular needs of the family." (*In re M.F.* (2019) 32 Cal.App.5th 1, 13 (*M.F.*).)

At each review hearing, "if the child is not returned to his or her parent, the juvenile court is required to determine whether 'reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent .…' (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).) The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult .…'" (*M.F.*, *supra*, 32 Cal.App.5th at p. 14.)

In making this determination, we bear in mind that "[i]n almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) We review the juvenile court's findings for sufficiency of the evidence. (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345.) " ' "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." ' [Citation.]" (*Ibid.*)

Where, as here, the trial court concluded that the party with the burden of proof did not carry the burden, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

The agency contends that the court based its decision on the misguided assumption that the social worker was required to have known of mother's intellectual disability at the outset of the proceedings. It argues that the court's ruling that the initial case plan was inadequate is inconsistent with the court's previous approval of that plan. Mother does not respond to the agency's reasonable services argument on the merits. We recognize that this decision was an implied concession of the ultimate issue, but we will still address the juvenile court's finding that reasonable efforts were not made. (See *In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1351 [a failure to respond to an argument is an implicit concession].)

In the present case, the child was removed from mother's care due to both parents' substance abuse and past neglect of the child's siblings. The objectives and responsibilities of mother's case plan included individual counseling, couples counseling, substance abuse assessment, drug testing, and a psychological evaluation. Mother was already connected to a mental health clinician at the outset of the proceedings, and the juvenile court approved mother's case plan at the disposition hearing held on August 31, 2023.

During the six-month reunification period, mother missed several individual counseling sessions, and she refused to complete in-person sessions with her clinician. The social worker completed monthly contacts with mother, and she discussed the objectives and responsibilities of mother's case plan during each contact. Mother was provided a planner to assist her in managing appointments, and a referral was submitted to intensive family reunification services. However, the referral to intensive services was closed due to mother's failure to respond.

On October 24, 2024, mother started to participate in her clinical interview for the psychological evaluation, and Dr. Anderson completed the report on December 14, 2023. The report concluded that mother suffered from a mild intellectual disability based upon the various assessments completed by Dr. Anderson. The evaluation recommended that

13.

mother be given a substantial amount of time to learn and demonstrate her skills. Dr. Anderson indicated that mother's case plan was not previously tailored to her specific needs as a parent with an intellectual disability, and the case plan needed to be modified because mother's services may require an extended period of time.

In response to the psychological evaluation, the agency connected mother to intensive family reunification services and a parent partner. The agency was also proactively engaging mother's service providers to specifically tailor her case plan as recommended by the evaluation. At the six-month review hearing, the juvenile court refused to find that reasonable services were provided for the entire period due to the results of mother's psychological evaluation. The court acknowledged that the agency "immediately" shored up its efforts after the evaluation was received on December 14, 2023, and it found that reasonable services were provided after that date.

As discussed previously, the record must demonstrate that the agency, "identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult...." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) Here, the agency identified neglect and substance abuse as the problems leading to the loss of custody, and it offered services to fix those problems. The social worker took numerous steps to help assist mother when compliance proved difficult throughout the reunification period.

The juvenile court's comments suggest that the agency should have been aware of mother's cognitive deficits prior to the completion of the evaluation, however, the case plan approved by the court included a recommendation for a psychological evaluation. During the social worker's contacts with mother, she identified herself as a high school graduate with no difficulties in school, and she claimed that she would be attending college. The agency had identified concerns with mother's understanding of her situation

at the time of disposition, and it requested that a psychological evaluation be completed as part of her case plan.

In sum, there were simply no facts present for the court to infer that mother's intellectual disability was apparent prior to the completion of the psychological evaluation. A social worker does not have the expert qualifications of a mental health professional such as a psychologist or therapist to make such a diagnosis in the first instance. Accordingly, a case plan tailored to mother's cognitive difficulties was not necessary until such a diagnosis was rendered by Dr. Anderson.

Therefore, we conclude the evidence compelled the court to find that the agency made reasonable efforts to return the child to his home for the entire review period. The agency made continued efforts to connect mother to services despite her lack of cooperation and compliance during the review period. In making its finding, the juvenile court improperly focused on the ineffectiveness of the services that were provided to mother due to her undiagnosed cognitive disability. The court should have considered the agency's extensive efforts in light of the limited information available to it regarding mother's intellectual capacity. Under the circumstances there was no room for a determination that reasonable services were not provided prior to December 14, 2023.

## DISPOSITION

The juvenile court's order of February 13, 2024, is reversed only with regard to its finding that the agency had not complied with the case plan by making reasonable efforts to make it possible for the child to safely return home prior to December 14, 2023, and that finding is vacated. The matter is remanded to the juvenile court to enter a new finding that the agency had complied with the case plan by making reasonable efforts to make it possible for the child to safely return home for the entire review period. In all other respects, the order is affirmed.

FRANSON, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.